```
Ian Gage
4110 W Eva St
Phoenix, AZ, 85051
(602) 653-5787
isb3@nau.edu
```

☑ FILED ___ LODGED
___ RECEIVED ___ COPY

APR 3 0 2019

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ian Gage, <br><br> Plaintiff, <br> vs. <br> MIDWESTERN UNIVERSITY, <br><br> Defendant | Case No.: Number  CV-19-02745-PHX-DLR <br><br> ***COMPLAINT DEMAND FOR JURY TRIAL*** |

    Plaintiff, Ian Gage, brings this complaint and demand for Jury Trial against defendant Midwestern University. Plaintiff has been adversely affected by unlawful employment practices taken against him by Defendant on the basis of his sex (male), disability (chemical sensitivity) and in retaliation for his opposition to employment practices made unlawful by Federal Statutes. In addition, Defendant unlawfully retaliated against Plaintiff because he complained about improper sex and disability-based conduct carried out at Midwestern University. After Plaintiff followed Defendant's internal complaint process to raise concerns of discrimination, his director increased the harassment and assigned him lethal work duties with chemicals he was not trained with or knew the hazards of. The plaintiff was hospitalized on multiple occasions which he submitted notice to the defendant. The defendant intentionally refused and concealed all records of hospitalization and report of disability.

**Jurisdiction**

    This court's federal question jurisdiction over Plaintiff's federal statutory claims is invoked pursuant to 28 U.S.C. § 1331 and 1343(a)(1),(2) and(4). This action is authorized and instituted pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. Section 1981, and Title VII of the Civil Rights Act of 1964. Venue is proper in this court pursuant to 42 U.S.C § 2000 e – 5(f)(3) and 28 U.S.C. § 1391(b).

    Furthermore, the plaintiff meets the definition set forth by the American with Disabilities Act of 1990 pursuant to 42 U.S.C. §§ 12102 and was discriminated against by the defendant in line with 42 U.S.C. §§ 12132 and seeking enforcement pursuant to 42 U.S.C. §§ 12133. The plaintiff has a right to sue per 29 CFR §§ 1601.28. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District

COMPLAINT DEMAND FOR JURY TRIAL - 1

Court for the District of Arizona. The plaintiff has been discriminated and retaliated against per the Civil Rights Act of 1964 and American with Disabilities Act of 1990.

## Complaint 1

### Discrimination Based Off of Sex in Conjunction with Title VII of the Civil Rights Act of 1964

On July 17, 2017, Ian Gage was hired by the defendant as a Pathology Case Coordinator. At that time, Alexandria Brower, director of the department started discriminating against Mr. Gage based off his sex. Brower immediately assigned Gage unfavorable and menial tasks based off of his gender alone. All mentioned tasks were better suited for other current positions currently filled at the site. These tasks fall under disparate treatment.

(a) Within the first week of starting work, Gage was assigned to travel to other cites as a Midwestern University Representative. Dr. Brower stated that this task was given to him strictly because he was a male. The female histology manager along with all other female employees whom job descriptions suited this were not assigned it.

(b) Shortly after, Mr. Gage was assigned to daily facilities cleanup by Brower. This started as machine chemical cleaning all grounds, then progressed to hand scrubbing animal viscera and fecal matter off grounds, walls and tools. There was a female facility crew exactly suited for this task per their job description; however, Brower reassigned the task to Gage.

(c) Gage was assigned by Brower to order her personal lunches. Brower also mandated Gage to set up eating areas, including plates and utensils. Brower had a female administrative assistant for this but reassigned her secretary work to Gage.

(d) Gage was assigned by Brower to sit at her assistant's desk and do her secretarial work. Her assistant was then promoted to an office nowhere near Brower. The new desk for Gage was situated in the sun. When Gage wore a hat, he was mocked by Brower as being a weak male.

(e) As the discrimination progressed, Gage was assigned to make large quantities of chemical solutions. The chemicals were above industry standard carcinogens and so dangerous that the federal government made its own regulations specifically for them. There were two female histology technicians trained to handle these chemicals per the federal regulations. The

unfavorable and lethal task was reassigned by Brower to Gage. Gage was not allowed federally mandated training on these chemicals based off his sex in relation to 42 U.S.C. §§ 2000e-2 (d). These mandated trainings would have aided in his ability to promote and avoid his later noted injury and ADA disability. When Gage expressed safety concerns as well as signs and symptoms of his exposures, he was mocked by Brower and made fun of for being a weak male. When females brought up their concerns on safety and even Gage's exposure, they were listened to and worked with by Brower.

Brower would make comments directed at Gage and other males to shame them in public meetings such as "men don't know how to communicate" and "I don't know how the world got this far with men in control". Comments and variations of the comments were made weekly during meetings and in one-on-one discussions.

As Gage brought up further complaints of illness and discrimination, Brower increased the dangerous tasks/disparate treatment she was assigning him. In retaliation and relation to 42 U.S.C. §§ 2000e-3 (a), Brower made Gage start hand scrubbing hundreds of disposable buckets covered in dangerous chemicals that Gage was unaware of. This resulted in head to toe full body splashes including the eyes and prolonged hours of inhalation exposure to far above industry safety limits. This also resulted in emergency hospitalizations directly from work and further disparate impact on Gage. On one occasion, Gage's coworkers found him in a medically emergent state and pleaded with Brower to call an ambulance. Brower declined and told Gage to drive home himself and take an unpaid leave of absence. Gage's coworkers pleaded with Brower that Gage could not stand let alone drive and offered to drive him themselves to the Emergency Room. Doctors noted that Gage's signs and symptoms were consistent with chemical exposure he was assigned by Brower to work with. Gage's exposure was noted with lung, liver, neurologic, and eye damage with increased chance for developing cancer in the future from the chemicals.

Gage was later terminated by the defendant in part to his sex and in retaliation for his opposition to employment practices made unlawful by the Federal Statutes. This claim is in relation to 42 U.S.C. §§ 2000e-2 (m) and 42 U.S.C. §§ 2000e-3 (a).

## Complaint 2

### Discrimination Based Off of Title I and V of the Americans with Disabilities Act of 1990

COMPLAINT DEMAND FOR JURY TRIAL - 3

Gage filed internal injury and disability claims and reports of sex-based discrimination by following the defendant's internal protocols. After filing, Brower and her colleague pulled Gage into a centrally located glass room in front of all his work colleagues and proceeded to scream-demand that he tell them who else he gave these reports to including government agencies. Coworkers on different floors of the building heard the interrogation and threats to Gage. Afterwards, coworkers noted their fear of losing their jobs and what happens if you stand in opposition to unlawful employment practices.

The defendant then placed Gage on an undefined leave with no end date. Gage was not allowed back to his desk to gather his belongings. Gage was directly escorted off campus by security.

During Gage's leave, numerous paycheck errors started occurring on his checks which were not able to be corrected in a reasonable amount of time.

The defendant demanded a very specific doctor's note to validate Gage's disability. Gage provided a specialty doctor's note and request for reasonable accommodations. The defendant declined both the note and the accommodations.

When Gage explained concerns for safety and how his disability without reasonable accommodations can cause his lungs to seize and not allow him to breath, the defendant argued "safety not being addressed is not something that I can accommodate". In Gage's request for reasonable accommodation, he again asked to be given federally mandated respiratory fit testing, hazard communication, and training on the chemicals he was to work with. The defendant refused all requested job trainings even though it was currently being offered to all other employees working with the chemical infringing on 42 U.S.C § 12112.

The defendant then again stated Gage needs a more specific doctor's note. The diagnosing physician asked the defendant to call them for their unique and increasingly evolving specific requests. The defendant refused to call and gave Gage a few days to schedule a new appointment and make a more custom note to his job duties as they relate to chemical exposure. The defendant refused to provide Gage with his job description as it relates to the

COMPLAINT DEMAND FOR JURY TRIAL - 4

chemical or any federal mandated notes about the chemical and how it relates to his disability. When Gage confirmed with the defendant that the appointment was made, the defendant threatened cutting his medical benefits.

The defendant performed retaliation in the forms interference, coercion, and intimidation tactics toward Gage as defined 42 U.S.C § 12203.

The defendant gained illegal access to Gage's medical record and used it to blackmail him into voluntarily quitting or to force him to provide many dangerous non-medically approved tests that his insurance would not cover nor were recommended by a licensed physician. The defendant required Gage, under threat of termination, to obtain a multitude of medical examinations (relevant and not) to determine his validly of his disability. These required examinations were directly infringing on 42 U.S.C § 12112 (4) (b) and in no way were voluntary or provided by the defendant.

The defendant attempted fear tactics stating that Gage could have multiple terminal illnesses such as lung cancer and he needed to get more tests done outside of what his doctor prescribed for his own health. The defendant made mention of Gage's family and pregnant wife/soon newborn son as leverage to voluntarily quitting (with benefits severance) or "you can sit at home without pay for however long this process takes".

The defendant used coercion tactics such as offering Gage financial incentive specifically stating he can no longer talk to the government about the unlawful practices.

After intimidation and coercion failed, the defendant ran interference tactics such as deceptively altering chemical test results and testing methods as well as blocking Gage access to his work email and deleting internal discrimination and injury submission forms. The defendant went on record to say that no reports of injury or doctor's notes were ever submitted. Gage has hard evidence to prove otherwise. The defendant argued that Gage never worked with the chemical that led to his disability in the first place. Gage provided hard evidence of this chemical handling being the majority of his work day.

COMPLAINT DEMAND FOR JURY TRIAL - 5

Gage was terminated intentionally based on discrimination of his disability as met by the definitions in 42 U.S.C § 12102 and in accord 42 U.S.C § 12112.

### Demand

(1) For complaints to be evaluated in a Trial by Jury.

(1) To the extent necessary, the defendant shall expunge from the personal files of Mr. Gage:

    (a) All references to the charges of discrimination;

    (b) All references to coworkers' participation in this action, any derogatory document which relates to complaints or investigation of complaints of unlawful harassment and/or unlawful termination.

(2) The defendant to pay all Compensatory Damages in the amount of $200,000 pursuant to Section 102(B) of the Civil Rights Act of 1991.

(3) Defendant to pay treble punitive damages for willful intent regarding retaliation and conspiracy to cover-up disability documents.

(3) Plaintiff awarded cost of suit and reasonable attorney's fees.

(4) Defendant to refile injury and disability papers in Gage's personal file.

(5) Plaintiff to have other, further, and different relief as this court deems just and proper.

Dated 4-30-2019

                                              */s/ Ian Gage*
                                              Ian Gage
                                              4110 W Eva St
                                              Phoenix, AZ, 85051
                                              (602) 653-5787