**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ian Gage, | No. CV-19-02745-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Midwestern University, | |
| Defendant. | |

This matter comes before the Court on remand from the Ninth Circuit Court of Appeals. (Doc. 97.) The Court held a telephonic conference on January 14, 2025, to discuss next steps. (Doc. 95.) During that conference, Plaintiff Ian Gage indicated that he wished to supplement the record with additional discovery material. The Court authorized Mr. Gage to file a motion to conduct additional discovery. Mr. Gage filed that motion on February 12, 2025 (Doc. 100), and the motion is fully briefed (Docs. 105, 109.) This order (1) summarizes the procedural posture of the case, (2) addresses Mr. Gage's motion for leave to conduct additional discovery, and (3) details how the case will proceed from here.

**I.    Background and Procedural Posture**

Mr. Gage filed the complaint in this action on April 30, 2019. (Doc. 1.) His complaint alleges that his former employer, Defendant Midwestern University ("the University"), discriminated against him because of his sex in violation of Title VII of the Civil Rights Act of 1964, discriminated against him because of his disability in violation

of the Americans with Disabilities Act ("ADA"), and retaliated against him for engaging in activity protected by the ADA. (*Id.*; *see also* Doc. 16 at 1-7.)

After the close of discovery, the University moved for summary judgment on all claims. (Doc. 44.) With respect to the ADA discrimination claim, the University argued that Mr. Gage lacked sufficient evidence that he was disabled within the meaning of the ADA.[1] (*Id.* at 11-14.)

On January 18, 2022, the Court granted the University's summary judgment motion. (Doc. 58.) In so doing, the Court agreed that the record lacked evidence that Mr. Gage was disabled within the meaning of the ADA. The Court explained that Mr. Gage relied principally on his doctor's notes, but that those notes "do not indicate that the symptoms of which [Mr.] Gage complained were anything more than temporary." (*Id.* at 10.) The Court also observed that "[t]he doctors' notes do not state that [Mr.] Gage's exposure to formaldehyde and his transient respiratory symptoms resulted in substantially limiting a major life activity, as required by the ADA." (*Id.* at 11.)

Mr. Gage appealed the Court's ruling. (Doc. 61.) The Ninth Circuit affirmed the Court's decision granting summary judgment to the University on Mr. Gage's Title VII claims and ADA retaliation claim. (Doc. 78-1 at 1-3.) It reversed the Court's ruling on Mr. Gage's ADA discrimination claim because, after the Court issued its decision, the Ninth Circuit released an opinion clarifying that the ADA's definition of disability is not subject to any categorical temporal limitation. (*Id.* at 4.) The Ninth Circuit therefore remanded the case for this Court to reconsider "whether [Mr.] Gage is disabled under [the ADA] and whether he has provided sufficient evidence to carry his summary judgment burden on that claim." (*Id.*)

On remand, the Court held a telephonic status conference to discuss next steps. (Doc. 73.) Because a considerable amount of the original summary judgment briefing

---

[1] The University also stated its belief that Mr. Gage was not qualified to perform the essential functions of his job because he refused to return to work, and that the University could not have denied Mr. Gage a reasonable accommodation because he never asked for one. (*Id.* at 14.) Other than stating these conclusions in two sentences, however, the University did not develop those arguments in its brief, and the Court's subsequent order did not consider them. (*See* Doc. 58 at 9-11.)

- 2 -

addressed Mr. Gage's Title VII and ADA retaliation claims, which had not been remanded, the Court determined that it was sensible for the parties to file supplemental summary judgment memoranda focusing solely on the ADA discrimination claim. (Doc. 82 at 4.) Both sides agreed, as well, that no new evidence would be submitted with the supplemental memoranda. Instead, the parties would ground their arguments in the existing evidentiary record. (*Id.* at 6-7.)

Thereafter, the University filed its supplemental summary judgment brief, which focused solely on whether Mr. Gage is disabled within the meaning of the ADA.[2] (Doc. 74.) The University attached to its supplemental brief a copy of the complaint Mr. Gage filed in a separate lawsuit against the Arizona Board of Regents. (Doc. 74-1.) Mr. Gage filed a supplemental response (Doc. 77) and moved to strike the exhibit the University had attached to its supplemental brief, arguing that the University was expanding the evidentiary record beyond what existed at the time of the original summary judgment briefing (Doc. 76).

The Court again ruled in favor of the University after finding that Mr. Gage had not presented sufficient evidence to create a triable issue of fact regarding whether he's disabled within the meaning of the ADA. (Doc. 85.) The Court observed that Mr. Gage relies primarily on doctors' notes, and although those notes indicate that Mr. Gage was experiencing symptoms consistent with formaldehyde exposure, they did not state Mr. Gage has a particular physical or mental impairment, nor do they show that Mr. Gage's reaction to formaldehyde substantially limited any major life activities. (*Id.* at 5.) The Court also noted that Mr. Gage relied on "his own email to the University summarizing . . .symptoms that he argues line up with major life activities," but the Court discounted the email because it "is an unsworn, uncorroborated and self-serving statement, which alone cannot create a genuine issue of fact." (*Id.* at 6 (internal quotations and citation omitted).)

On appeal, the Ninth Circuit reversed after concluding that the Court had erred by disregarding Mr. Gage's email to the University because the email reflects Mr. Gage's

---

[2] The University did not argue in the alternative that even if Mr. Gage is disabled within the meaning of the ADA, his discrimination claim fails on some other element.

- 3 -

personal knowledge, and he could testify consistent with its contents at trial. (Doc. 97-1.) The Ninth Circuit remanded for the Court "to consider in the first instance whether the contents of the email, in addition to the other evidence in the record, raise a genuine dispute of material fact as to whether the symptom's of [Mr.] Gage's formaldehyde sensitivity and his respiratory impairments substantially limit a major life activity." (*Id.* at 2.)

On January 14, 2025, the Court held a telephonic conference to discuss the Ninth Circuit's remand decision and how to move forward. (Doc. 95.) During that call, the Court explained its understanding of the Ninth Circuit's order: "the Ninth Circuit is instructing [the Court] to look at Mr. Gage's email to the [U]niversity along with his doctor's notes and decide whether that evidence creates a genuine issue of material fact as to whether Mr. Gage's symptoms substantially limit a major life activity." (Doc. 98 at 8.) Mr. Gage, however, disagreed that the evidentiary record should be so limited. Instead, Mr. Gage argued that he should be permitted to supplement the evidentiary record with, among other things, records of a pulmonary function test ("PFT"), and to conduct some additional discovery into what he described as fraudulent acts and spoliation of evidence. (*Id.* at 31.) The University disagreed that the evidentiary record should be expanded but argued that the Court should permit "supplemental briefing on the narrow question that the Ninth Circuit remanded to be decided[.]" (*Id.* at 41.)

After hearing from the parties, the Court authorized Mr. Gage to file a motion to conduct additional discovery and supplement the evidentiary record. (*Id.* at 37.) The Court declined to order supplemental summary judgment briefing at that time, choosing instead to await the outcome of Mr. Gage's anticipated discovery motion. (*Id.* at 42.)

**II.    Mr. Gage's Motion to Conduct Additional Discovery**

The Ninth Circuit remanded for this Court to consider the contents of Mr. Gage's email, in addition to the other evidence in the record, and determine whether a triable issue exists as to whether Mr. Gage is disabled within the meaning of the ADA. In his motion, Mr. Gage describes evidence that is not presently in the record. Because some of the discovery, as described by Mr. Gage, appears to be relevant, and because the University

has not shown it would be prejudiced by the additional discovery, the Court, in its discretion, will allow Mr. Gage to conduct some limited additional discovery, as described below. In its discussion, the Court will identify the discovery requests by the names used in Mr. Gage's motion.

### A. PFT

Mr. Gage seeks to supplement the summary judgment record with the results of a PFT. The University objects that the PFT was untimely disclosed and is inadmissible. Although the Court agrees with the University that disclosure of the PFT is untimely under Federal Rule of Civil Procedure 26,[3] the University's objection is overruled because it has not shown that the timing of disclosure is harmful. *See* Fed. R. Civ. P. 37(c)(1). As for admissibility, the Court is not prepared to rule that Mr. Gage could, under no circumstance, offer the PFT into evidence in an admissible manner at trial. The University remains free to raise its admissibility objections at trial, but the Court will not exclude it for purposes of summary judgment. Mr. Gage will be permitted to supplement the summary judgment record with the PFT.

### B. Documents Related to Government Corruption

Mr. Gage seeks communications between the Arizona Division of Occupational Safety and Health ("ADOSH") and the University. Assuming these documents exist, the University has not argued that they are privileged. Communications that refer to or involve Mr. Gage's injury/disability could be relevant to matters involved in this case. If, as Mr. Gage alleges, the University has unredacted copies of the documents produced by ADOSH in response to Mr. Gage's Freedom of Information Act requests, Mr. Gage may propound discovery to seek the disclosure of these communications. If Mr. Gage previously propounded a request for production of these documents, the University shall respond to the request within 14 days of the date of this order. If not, then Mr. Gage may serve one such request for production on the University within 14 days of the date of this order.

### C. Missing Records- Formaldehyde

---

[3] The PFT was prepared on April 9, 2018. It was available to Mr. Gage well before the Court ruled on the motion for summary judgment.

Mr. Gage seeks discovery into the monitoring results for 40% formaldehyde exposure, in accordance with the Standard Operating Procedure that Mr. Gage alleges he was instructed to follow. The Court finds those documents relevant for discovery purposes. If Mr. Gage previously propounded a request for production of these documents, the University shall respond to the request within 14 days of the date of this order. If not, then Mr. Gage may serve one such request for production on the University within 14 days of the date of this order.

### D. Mr. Gage's Communications with Hartford in the University's Possession

Mr. Gage is entitled to all his statements and communications with the University or any other person or entity that are in the University's possession and that pertain to this action or the subject matter involved in this case. *See* Fed. R. Civ. P. 26(b)(3)(C). If Mr. Gage previously propounded such a request, the University shall respond to it within 14 days of the date of this order. If not, then Mr. Gage may serve one such request for production on the University within 14 days of the date of this order.

### E. Mr. Gage's Medical Records Gathered by the University in this Litigation from Mr. Gage's Medical Providers

Mr. Gage signed medical releases allowing the University to obtain his medical records from his providers relating to the injuries he has alleged in this action. He is entitled to copies of the records obtained by the University. No request for production is necessary. The University indicates in its response that it has provided Mr. Gage with all medical records that it has gathered in this litigation. If such is the case, then within 14 days of the date of this order, the University shall certify to Mr. Gage in writing that it has disclosed to him copies of all medical records obtained by the University in connection with this action. To the extent that any such records have not been provided to Mr. Gage, the University shall provide them to Mr. Gage within 14 days of the date of this order.

### F. University of Arizona ("U of A") Records

Mr. Gage protests the University's use of a "large file" pertaining to his Equal Employment Opportunity Commission complaint against the U of A. He indicates that the

University has not produced that file to him. The University indicates that the documents in its possession regarding Mr. Gage's complaint against the U of A were obtained from the Court's docket in that case and, as such, are public records Mr. Gage is equally capable of accessing. Pursuant to the disclosure requirements of Rule 26(a), if the University intends to use any of those documents to support its claims or defenses, and if it has not already done so, it shall provide Mr. Gage with copies—or description of those documents by category and location—within 14 days of the date of this order.

### G. Alleged Retaliatory Actions Against Mr. Gage's Mother

Mr. Gage alleges that the University engaged in retaliatory actions against his mother, who was employed by Abrazo Health, by causing her to be removed from her position. He asks the Court to order the University to produce a variety of documents pertaining to communications and contracts with Abrazo Health, and to issue a restraining order against the University. However, Mr. Gage's mother is not a party to this action. Mr. Gage's complaint does not allege retaliatory conduct toward his mother. And the only claim remaining in this case after the Ninth Circuit's review is Mr. Gage's claim of disability discrimination under the ADA. The Court will not permit discovery into a claim that is not part of this case and which, according to the timeframes described in Mr. Gage's motion, would have long since been time-barred.

### H. Mr. Gage's Allegations of Fraud and Spoliation

A major portion of Mr. Gage's discovery motion focuses on conducting discovery into alleged fraud and spoliation of evidence by the University and by non-parties, including the Government and Hartford Insurance. Preliminarily, the Court notes that many of these allegations were previously raised by Mr. Gage in a "Request for Court Investigation of Attorney's Misconduct," (Doc. 56) which the Court addressed and denied in an order dated January 18, 2022 (Doc. 60). The Ninth Circuit remanded this case for further consideration of whether Mr. Gage has sufficient evidence to create a genuine of issue of material fact for trial. The remand did not re-open every aspect of this case for reconsideration.

In any event, Mr. Gage has not shown that discovery into his spoliation and fraud allegations is warranted. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or reasonably foreseeable litigation." *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 625 (C.D. Cal. 2013) (cleaned up). When "there is some indication that a party's discovery has been insufficient or deficient" due to spoliation or otherwise, the court may permit "discovery into a party's discovery process." *Anstead v. Va. Mason Med. Ctr.*, No. C21-0447JCC-JRC, 2022 WL 1641425, at *5 (W.D. Wash. May 24, 2022). "Discovery on discovery" is disfavored and requests to engage in it are "closely scrutinized." *Id.* "Mere speculation about missing evidence is insufficient to allow discovery on discovery," and the moving party "bears the burden of producing specific and tangible evidence of a material failure of an opponent's obligation[s]." *LKQ Corp. v. Kia Motors Am., Inc.*, No. 21 C 3166, 2023 WL 4365899, at *7 (N.D. Ill. July 6, 2023); *see also Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019) (requiring "particularized reason[s]" for why discovery on discovery should be ordered). Having carefully reviewed Mr. Gage's motion, the Court finds that his allegations of fraud and spoliation are speculative and not grounded in tangible evidence of a material failure of the University to meet its discovery obligations. The Court will not permit this discovery.

### III.   Next Steps

Because the Court is permitting Mr. Gage to engage in some limited additional discovery, the Court will also permit additional supplemental summary judgment briefing to afford the parties an opportunity to supplement the evidentiary record with material evidence uncovered through this additional discovery. To be clear, the Court is not permitting the University to raise new arguments for summary judgment that were not raised in its initial summary judgment motion. The University argued that it was entitled to summary judgment on Mr. Gage's ADA discrimination claim because Mr. Gage is not disabled within the meaning of the ADA. Accordingly, the supplemental summary judgment briefs shall be limited to the question of whether there is sufficient evidence to

create a triable issue of fact as to whether Mr. Gage is disabled within the meaning of the ADA. If the discovery authorized in this order produces evidence material to this issue, the parties may supplement the summary judgment record with that evidence.

As the Court has noted in its prior orders, a person is disabled for purposes of the ADA if he has a physical or mental impairment that substantially limits a major life activity. One difficulty the Court has encountered in this case is identifying with specificity what Mr. Gage's alleged impartment(s) is/are.

At times, Mr. Gage appears to argue this case as if it were a workers' compensation case, which is to say he argues that he was injured on the job and seeks redress for that workplace injury. But the ADA is not a workers' compensation statute; it is an anti-discrimination statute precluding employers from discriminating against employees because of their disabilities.

At other times, Mr. Gage appears to argue that his impairment is "formaldehyde exposure" or "chemical sensitivity." A physical or mental impairment means:

> (1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or
>
> (2) Any mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 U.S.C. § 1630.2(h). It is not clear to the Court, however, how exposure to formaldehyde qualifies as a physiological disorder or condition, as opposed to a workplace environmental hazard. And it also is unclear to the Court whether there is any evidence in the record that Mr. Gage has been diagnosed with "chemical sensitivity."

Portions of the record also suggest at times that Mr. Gage is arguing his impairment is respiratory (perhaps asthma), that his workplace exposure to formaldehyde exacerbated his respiratory impairment to the point that it began to substantially limit major life activities, and that the accommodations he wanted from the University related to greater

safety around formaldehyde so that he could perform his work without triggering his respiratory issues. For its part, the Ninth Circuit appears to have understood Mr. Gage to be claiming that he has "formaldehyde sensitivity" and "respiratory impairments."

It would greatly assist the Court if, when supplementing his summary judgment briefing, Mr. Gage would provide the Court with clear answers (and citations to supporting evidence, if any) to the following questions: (1) what are his alleged physical or mental impairments, (2) what major life activities does he contend those impairments substantially limit, and (3) how are those major life activities substantially limited?

**IT IS ORDERED** as follows:

1. Mr. Gage's motion to conduct additional discovery and to supplement the evidentiary record (Doc. 100) is **GRANTED IN PART** as explained in section II of this order.

2. Within the earlier of 14 days after the completion of the additional discovery authorized herein, or 60 days of the date of this order, the University shall file its supplemental summary judgment brief, limited to 10 pages, double-spaced in 13-point font, addressing whether Mr. Gage is disabled within the meaning of the ADA.

3. Within 14 days after being served with the University's supplemental summary judgment brief, Mr. Gage shall file a supplemental response brief, limited to 10 pages, double-spaced in 13-point font.

4. With 7 days after being served with Mr. Gage's supplemental response brief, the University may file a supplemental reply, limited to 5 pages, double-spaced in 13-point font.

Dated this 2nd day of May, 2025.

Douglas L. Rayes
Senior United States District Judge