**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ian Gage, | No. CV-19-02745-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Midwestern University, | |
| Defendant. | |

At issue is Defendant Midwestern University's ("Midwestern") Second Supplemental Motion for Summary Judgment (Doc. 121) and Plaintiff Ian Gage's Motion to Reinstate Previously Dismissed Claims, Supplement Charges and Leave to Amend Complaint Pursuant to Rule 15, 54, and 60 (Doc. 154), both of which are fully briefed (Docs. 122, 123, 156, 157, 159, 161, 162). For reasons explained below, the Court grants Midwestern's motion for summary judgment and denies Mr. Gage's motion to reinstate previously dismissed claims and to amend his complaint.

## I.     Background

Mr. Gage's complaint alleges that Midwestern, his former employer, discriminated against him because of his sex in violation of Title VII of the Civil Rights Act of 1964, discriminated against him because of his disability in violation of the Americans with Disabilities Act ("ADA"), and retaliated against him for engaging in activity protected by the ADA. (Doc. 1.) The Court granted summary judgment in favor of Midwestern on all

claims. (Doc. 58.) In so doing, the Court found the record lacks sufficient evidence that Mr. Gage is disabled within the meaning of the ADA. (*Id.* at 11.)

The Ninth Circuit affirmed the Court's disposition of Mr. Gage's Title VII claims and ADA retaliation claim but reversed the Court's ruling on Mr. Gage's ADA discrimination claim and remanded with instructions to reconsider whether Mr. Gage is disabled. (Doc. 78-1.) Following receipt of supplemental briefing focused solely on the ADA claim, the Court again granted summary judgment for Midwestern, finding that Mr. Gage had not presented sufficient evidence to create a triable issue of fact regarding whether he is disabled. (Doc. 85.) The Court observed that Mr. Gage relies primarily on doctors' notes, and although those notes indicate that Mr. Gage had experienced symptoms consistent with formaldehyde exposure, they do not show that Mr. Gage's reaction to formaldehyde substantially limited any major life activities. (*Id.* at 5.) The Court also noted that Mr. Gage relied on "his own email to [Midwestern] summarizing . . . symptoms that he argues line up with major life activities," but the Court disregarded the email because it "is an unsworn, uncorroborated and self-serving statement, which alone cannot create a genuine issue of fact." (*Id.* at 6 (internal quotations and citation omitted).)

The Ninth Circuit reversed after concluding that the Court had erred by disregarding Mr. Gage's email to Midwestern because the email may reflect Mr. Gage's personal knowledge, and he possibly could testify consistently with at least some of its contents at trial. (Doc. 97-1.) The Ninth Circuit remanded for the Court "to consider in the first instance whether the contents of the email, in addition to the other evidence in the record, raise a genuine dispute of material fact as to whether the symptoms of [Mr.] Gage's formaldehyde sensitivity and his respiratory impairments substantially limit a major life activity." (*Id.* at 2.)

On remand, the Court permitted Mr. Gage to supplement the evidentiary record with the results of a pulmonary function test ("PFT") and to serve some additional requests for production of documents ("RFPs"). (Doc. 112.) The Court also permitted limited additional summary judgment briefing to afford the parties an opportunity to supplement the

evidentiary record with material evidence that might be uncovered in response to Mr. Gage's RFPs. (*Id.*)

The parties have since submitted their supplemental summary judgment briefs. (Docs. 121, 122, 123, 156, 159). The only new evidence that was not already part of the existing summary judgment record is a copy of the PFT results. (Doc. 121-1 at 6.)

Additionally, on January 12, 2026, Mr. Gage filed a motion seeking leave to amend his complaint to add new claims, and to reinstate his Title VII and retaliation claims. (Doc. 154.) Midwestern responded to that motion on January 23, 2026 (Doc. 161), and Mr. Gage replied on January 30, 2026 (Doc. 162).

## II.    Midwestern's Motion for Summary Judgment

### A. Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. Discussion

The Ninth Circuit remanded for the Court to consider whether the content of Mr. Gage's email, together with the other evidence in the record, creates a genuine issue of material fact as to whether the symptoms associated with Mr. Gage's alleged formaldehyde exposure and sensitivity substantially limit a major life activity. Accordingly, for purposes of this order, the Court takes as a given that Mr. Gage has a formaldehyde sensitivity and experienced symptoms—namely, headaches, burning and itchy eyes, respiratory issues, and fatigue—because of exposure to the chemical in his workplace. The Court's analysis

focuses solely on whether the record contains sufficient evidence to permit a reasonable jury to find that those impairments substantially limit any of Mr. Gage's major life activities. After careful review, the Court concludes that it does not.

"Merely having an impairment does not make one disabled for purposes of the ADA." *Whitesell v. FMS Fin. Mgmt.. Servs., LLC*, No. 3:18-cv-00496, 2020 WL 2770017, at *6 (M.D. Tenn. May 28, 2020). Instead, plaintiffs in ADA cases "also need to demonstrate that the impairment substantially limits a major life activity." *Id.* "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.* § 12102(2)(B).

"An impairment is a disability within the meaning of [the ADA] if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability[.]" 29 C.F.R § 1630.2(j)(1)(ii). "In other words," a plaintiff must show that his impairment "not only *affect[s]* a major life activity but also substantially limit[s] one or more major life activities." *Whitesell*, 2020 WL 2770017, at *6 (quotations and citations omitted). "The determination of whether an impairment substantially limits a major life activity requires an individualized assessment," including "consideration of the difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed; and/or the way an impairment affects the operation of a major bodily function." 29 C.F.R § 1630.2(j)(1)(iv), (4)(ii).

Mr. Gage argues that his symptoms affect major activities such as seeing, sleeping, breathing, concentrating, and working. (Doc. 122 at 5.) The record contains evidence that Mr. Gage's symptoms affect these major life activities, but lacks sufficient evidence to permit a reasonable jury to find that these effects substantially limited Mr. Gage's ability to perform these activities as compared to most people in the general population.

Mr. Gage relies on two categories of evidence in an effort to create a triable issue of fact over whether his symptoms substantially limited any major life activities: (1) his medical records, including notes from his doctors and the results of a PFT and (2) an email he sent to Midwestern on December 26, 2017 describing his symptoms. (Doc. 122 at 3-4, 7-9.) None of this evidence would permit a jury to conclude that Mr. Gage's symptoms were substantially limiting.

### 1. Medical Records and Doctors' Notes

Although Mr. Gage's medical records and doctors' notes are evidence that Mr. Gage experienced the symptoms he describes, these records do not address whether those symptoms substantially limit any of Mr. Gage's major life activities.

Mr. Gage highlights an April 2, 2018 letter from Dr. Farid Ghebleh in which Dr. Ghebleh reports that he saw Mr. Gage for "symptoms of coughing, wheezing, eye irritation, rash and fatigue," but this letter says nothing about whether and to what degree those symptoms limit Mr. Gage's ability to perform major life activities. (Doc. 157-1 at 7.)

Mr. Gage also cites records from visits to Honor Health's emergency department on October 14 and 18, 2017 (Doc. 53 at 24-106), but nothing in those records indicates that Mr. Gage's symptoms are substantially limiting. To the contrary, these records contain many notations that undermine Mr. Gage's allegations. For example, they indicate that Mr. Gage experienced headaches with some dizziness but denied vision or neurological changes or shortness of breath, appeared to be in good health, was alert, oriented, not in respiratory distress, and negative for visual disturbances, cough and shortness of breath, back pain, weakness, and confusion. (Doc. 53 at 81, 83-84, 98.)

Mr. Gage cites Summit Medical Group progress notes by Dr. Jeremy Nebeker.

(Doc. 53 at 10-21.) These records support Mr. Gage's allegations that he experienced symptoms consistent with formaldehyde exposure and that these symptoms affected some major life activities. For example, a progress note dated a November 30, 2017 indicated that Mr. Gage has a history of asthma that is "well controlled with rare use of" an inhaler. Mr. Gage reported that he typically is "very active" but "noticed [an] increase in shortness of breath," feeling "winded with stairs," and "like he can't take a deep breath." (Doc. 53 at 16-17.) But these records do not reveal whether these symptoms substantially limited Mr. Gage's ability to perform major life activities as compared to the general population. What's more, like the Honor Health records, these progress notes are replete with statements that undermine Mr. Gage's allegations of substantial limitations. A September 10, 2018 progress note indicated that Mr. Gage "[d]enies any shortness of breath" and reported "mild fatigue[.]" (Doc. 53 at 14.) And a February 13, 2019 progress note indicated that Mr. Gage exercises for five hours per week, sleeps eight hours per day, denied routine nighttime cough or wheezing, reported that he typically is very active, and that he has a history of exercise-induced asthma that is well controlled with "rare use" of an inhaler. (Doc. 53 at 11.) These reports do not support Mr. Gage's allegation that his respiratory symptoms substantially limited his ability to breathe or sleep as compared to the general population.

Finally, nothing in the PFT indicates that Mr. Gage's symptoms are substantially limiting. The PFT indicates that Mr. Gage has asthma, but describes it as "[m]ild," and contains no information about how that mild asthma might impact Mr. Gage's ability to perform major life activities (Doc. 121-1 at 6.)

In sum, Mr. Gage's medical records and doctors' notes support Mr. Gage's allegations that he experienced certain symptoms and that those symptoms are consistent with a reaction to formaldehyde exposure, but they are not probative of whether those symptoms substantially limit Mr. Gage's ability to perform any major life activities as compared to the general population.

## 2. Mr. Gage's Email to Midwestern

Mr. Gage relies on a December 26, 2017 email to Midwestern to show how his symptoms impair his ability to perform major life activities. In that email, Mr. Gage describes symptoms he was experiencing, including burning eyes, trouble breathing, daily headaches, and fatigue. He reported that these symptoms "interfered with [his] sleeping," caused "fleeting vision" issues, and made it harder for him "to run a half mile at the gym." He also stated that he experienced back pain attributable to some of the tests his doctors had performed. (Doc. 121-1 at 2.)

Although this email supports Mr. Gage's allegations that he experienced certain symptoms and that those symptoms affected his ability to sleep, breathe, and see, the content of the email is insufficiently detailed to permit a reasonable jury to conclude that Mr. Gage's symptoms substantially limited any of these activities as compared to the general population. *See Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1059 (9th Cir. 2005) ("To survive summary judgment, an affidavit supporting the existence of a disability must not be merely self-serving and must contain sufficient detail to convey the existence of an impairment."). To see why, it is helpful to compare Mr. Gage's statements in this email to descriptions the Ninth Circuit has found adequate to show substantial limitations.

Like Mr. Gage, the plaintiff in *Head* alleged that his impairment substantially limited his ability to sleep. But to support his claim, the plaintiff explained:

> [even] after getting on medication my sleeping improved but I still periodically had serious problems. I would pass out for a while immediately after getting home from work. But I would not get a full night's sleep, and then after I woke up I had great difficulty going to sleep when it was time to go to bed for the night. This went on for months. Even with the medication I usually was only able to sleep five or six hours a night, compared to the seven to nine hours a night I slept prior to my diagnosis. I was drowsy during the day due to the medications and lack of sleep. Some nights even with the help of medications I could not get to sleep for hours or even at all.

413 F.3d at 1060. The Ninth Circuit found this description sufficient to create a triable issue of fact. *Id.* In contrast, Mr. Gage conclusorily states that his symptoms "interfered with [his] sleeping," without further elaboration as to the manner, frequency, degree, or

consequences of that alleged interference.

Similarly, Mr. Gage argues in his brief that his symptoms impaired his ability to concentrate and work. (Doc. 122 at 5.) In *Head*, the plaintiff claimed that his impairment limited his ability to think, and supported that allegation with an affidavit stating:

> My bipolar disorder and/or depression greatly affected my short-term memory and ability to concentrate both before and after I was hospitalized. I could not stay focused on something for more than brief periods. I did not have much of a short-term memory at all. I had to be repeatedly reminded of appointments, or tasks I had to do.... If I looked at written material for too long things just got jumbled in my mind and I would have to stop. I could not sit and focus on an entire television show. In the fall of 2001 I quit school because of my inability to focus or concentrate adequately.

413 F.3d at 1061. The Ninth Circuit found this description sufficient to create a triable issue of fact. *Id.* Here, however, Mr. Gage offers no details about the manner, frequency, or degree of his alleged concentration and work limitations.

Instead, this case is more akin to *Dale v. McDonough*, Case No. 1:22-cv-10815, 2024 WL 1662904 (E.D. Mich. Feb. 28, 2024), in which the United States District Court for the Eastern District of Michigan granted summary judgment in favor of the defendant in a case involving allegations of formaldehyde sensitivity. The court explained:

> Dale presents no evidence from which a reasonable factfinder could infer that she has a formaldehyde allergy, let alone an allergy severe enough to substantially limit any major life activity. Although her brief claims that formaldehyde exposure can cause a burning sensation in her eyes, chest tightness, "wheezing, fatigue[,] and headaches," she cites no evidence to substantiate any of these assertions. . . . Although the Court need not rummage through Dale's exhibits to find support for her arguments, Fed. R. Civ. P. 56(c)(3), it appears that Dale relies on two materials to establish her allergy. First is a note from her doctor stating Dale has "allergic rection[s]" to formaldehyde causing shortness of breath. . . . But "'[a] medical diagnosis alone is not enough to demonstrate a disability under the ADA.'" *Kelly v. First Data Corp.*, No. 1:19-cv-372, 2021 WL 3722760, at *5 (S.D. Ohio Aug. 23, 2021) (*quoting McNeil v. Wayne Cty.*, 300 F. App'x 358, 361 (6th Cir. 2008)). Sure, formaldehyde exposure may affect Dale's breathing, but broadly claiming that she experiences shortness of breath does not allow a factfinder to compare the impact of formaldehyde exposure on Dale's major life activities to the impact of formaldehyde exposure on the major life activities of an average person. Dale needs to establish the

degree of her allergy, not just its existence. *See McNeil*, 300 F. App'x at 361.

*Id.* at *8. The Court finds Mr. Gage's case suffers from substantially the same defects. Mr. Gage proffers evidence that he has certain symptoms and that, broadly speaking, these symptoms affect some major life activities. But he has not proffered evidence that would permit a reasonable jury to find that those effects translate to substantial limitations as compared to the general population.

### C. Conclusion

For these reasons, after a careful re-review of the record consistent with the Ninth Circuit's remand instructions, the Court again grants summary judgment in favor of Midwestern because Mr. Gage has not proffered sufficient evidence to permit a reasonable jury to find that his formaldehyde sensitivity, respiratory issues, and related symptoms substantially limited any major life activities as compared to the general population.

### III.    Mr. Gage's Motion to Reinstate Previously Dismissed Claims and Amend

Mr. Gage asks the Court to reinstate the Title VII and retaliation claims on which the Court previously granted summary judgment to Midwestern, and to grant him permission to amend his complaint to add additional claims. (Doc. 154.)

Mr. Gage's request to reinstate the Title VII and retaliation claims is denied. To the extent Mr. Gage intended for his motion to serve as a motion under Federal Rule of Civil Procedure 60(b)(2) for relief from the judgment due to newly discovered evidence, the motion is untimely because it was filed well over a year after the Court granted summary judgment on those claims.[1] *See* Fed. R. Civ. P. 60(c)(1). To the extent Mr. Gage is asking for reinstatement of these claims on some other basis, his request runs afoul of the rule of the mandate, which provides that issues disposed of by the Ninth Circuit are considered finally settled and not open to reexamination on remand. *See U.S. v. Thrasher*, 483 F.3d 977, 981-82 (9th Cir. 2007). Here, the Court granted summary judgment in favor of

---

[1] Mr. Gage argues that the one-year limitations period does not apply because his request is based, in part, on "fraud on the court" under Rule 60(d)(3). (Doc. 162 at 3.) The Court has repeatedly rejected Mr. Gage's claims that Midwestern committed such fraud. (*See* Docs. 60, 112 at 7-8.)

Midwestern on Mr. Gage's Title VII and ADA retaliation claims, and the Ninth Circuit affirmed that judgment, remanding only for reconsideration of Mr. Gage's ADA discrimination claim. The Ninth Circuit's disposition of Mr. Gage's Title VII and retaliation claims is finally settled and not open to reexamination.

Mr. Gage's request for leave to amend his complaint to inject new claims into this case is denied. This case has been pending since April 30, 2019. The Court set an October 31, 2019 deadline for amending pleadings. (Doc. 18.) Aside from the limited supplemental RFPs the Court recently authorized Mr. Gage to serve, the parties long ago completed fact discovery. The Court has resolved all of Mr. Gage's original claims through several rounds of summary judgment briefing. The Court's resolution of most of those original claims has been affirmed on appeal. Mr. Gage has not shown good cause for amending the scheduling order to accommodate amendments at this late stage, over six years after the deadline to amend pleadings. *See* Fed. R. Civ. P. 16(b) (requiring good cause for amending scheduling order deadlines).

**IT IS ORDERED** as follows:

1. Mr. Gage's Motion to Reinstate Previously Dismissed Claims, Supplement Charges and Leave to Amend Complaint Pursuant to Rule 15, 54, and 60 (Doc. 154) is **DENIED**.

2. Midwestern's Second Supplemental Motion for Summary Judgment (Doc. 121) is **GRANTED**.

3. The Clerk shall enter judgment in favor of Midwestern and terminate this case.

Dated this 31st day of March, 2026.

Douglas L. Rayes
Senior United States District Judge